**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 10-60159-CR-ZLOCH**

UNITED STATES OF AMERICA,

                Plaintiff,

v.

LEON COHEN LEVY and
MAURICIO COHEN ASSOR,

                Defendants.

_____/

**<u>ORDER</u>**

       This matter comes before the Court upon Defendants Leon Cohen Levy and Mauricio Cohen Assor's Motion to Enjoin Government Counsel for Impermissibly Invading the Defense Camp and for Related Relief [D.E. 47], upon referral by the Honorable William J. Zloch for disposition. *See* D.E. 48. In their Motion Levy and Assor allege that the United States has invaded the defense camp, improperly used the grand jury for the purpose of engaging in discovery against indicted Defendants, and intimidated and harassed defense witnesses. The Court has carefully reviewed Defendants' Motion, the Government's *Ex Parte* Response [D.E. 61], including all materials submitted in support thereof, and the record in this matter. Additionally, the Court has heard oral argument on Defendants' Motion on June 21, 2010, and has conducted an *ex parte* inquiry with the Government into Defendant's allegations. After thorough consideration, the Court now denies Defendants' Motion for the reasons articulated below.

## I.  Background

On April 15, 2010, Defendants Leon Cohen Levy and Mauricio Cohen ("Levy" and "Cohen," respectively, and collectively, "Defendants") were arrested on a Complaint [D.E. 3] charging them with conspiracy to defraud the United States for the purpose of obstructing the Internal Revenue Service in its collection of tax revenues, in violation of 18 U.S.C. § 371.  A federal grand jury subsequently returned an Indictment against Defendants on May 25, 2010.  *See* D.E. 33.  The Indictment charges both Defendants with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  *See id.* at 1-10.  Additionally, Levy is charged with two counts of fraud and false statements regarding tax returns, in violation of 26 U.S.C. § 7206(1), and one count of aiding or assisting in the filing of false and fraudulent documents in connection with the filing of tax returns, in violation of 26 U.S.C. § 7206(2).  *Id.* at 11, 14, 15.  Inversely, the Indictment alleges that Assor engaged in one violation involving fraud and false statements regarding tax returns, in violation of 26 U.S.C. § 7206(1), and two counts of aiding or assisting in the filing of false and fraudulent documents in connection with the filing of tax returns, in violation of 26 U.S.C. § 7206(2).  *Id.* at 12, 13, 16.

Prior to the grand jury's return of the Indictment, but also on May 25, 2010, E.M. was called to testify before the grand jury.  *See* D.E. 47 at 2.  As a result of Defendants' understanding of what transpired during E.M.'s grand jury testimony, Defendants have filed the pending Motion.

In their Motion Defendants assert that "[o]n information and belief, the prosecutors inside the grand jury questioned E.M. about her contacts with and work performed on behalf of the defense attorneys representing the Cohens."  *Id.*  Based on these allegations, Defendants seek an injunction restraining the United States from impermissibly invading the defense camp.  *Id.* at 3-4.

-2-

Defendants further state, "The prosecutors also confronted E.M. with unnecessary and embarrassing facts relating to her personal and emotional relationship with Leon Cohen." *Id.* Noting that the grand jury returned its Indictment immediately following E.M.'s testimony, Defendants complain that the United States, nonetheless, instructed E.M. to return for additional testimony on June 8, 2010. *Id.* Thus, Defendants contend, the Government is impermissibly using the grand jury to continue its investigation against Defendants. *Id.* at 4-5.

Finally, Defendants assert that "[o]n information and belief, the prosecutors and agents have confronted witnesses and upon hearing the witness's statements, accused witnesses of lying and threatened criminal prosecution unless the witness changed his/her testimony, to conform to the Government's theories." *Id.* at 2. Defendants' Motion contains no further details regarding the alleged harassment and intimidation. In view of these allegations, Defendants urge the Court to prohibit the Government from "further intimidating witnesses." *Id.* at 5.

In response, the Government filed its Opposition *ex parte* and under seal. *See* D.E. 61. Attached to the Opposition is a transcript of E.M.'s grand jury testimony from May 25, 2010, along with copies of exhibits referred to during that testimony. The Court further ordered the Government to file a second grand jury transcript with the Court under seal. *See* D.E. 65. On June 18, 2010, the Government did so. *See* D.E. 73. Defendants have not enjoyed the benefit of reviewing the transcripts as of this time.

On June 21, 2010, the Court held a hearing on Defendants' Motion. During that hearing, the Court advised the parties that it would hold an *ex parte* hearing with the Government in which the Court would inquire into Defendants' concerns and into the materials that the Government submitted in response to Defendants' Motion. Defendants indicated their agreement with the procedure.

-3-

Consequently, the Court immediately thereafter conducted an *ex parte* hearing with the Government. As a result of the Court's inquiry into Defendants' allegations, the Court finds no basis for entering an injunction in this matter at this time and therefore denies Defendants' Motion.

## II.  Analysis

In this case Defendants do not request disclosure of grand jury transcripts, but a brief review of the principles governing disclosure of matters occurring before the grand jury is, nonetheless, helpful to explaining why this Order must be somewhat circumspect.  Rule 6(e), Fed. R. Crim. P., requires secrecy of grand jury proceedings.   The purposes behind the secrecy of grand jury proceedings are as follows:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was not probability of guilt.

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 986 n.6 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628-29 (1954)).

Thus, Rule 6(e)(3), Fed. R. Crim. P., allows disclosure of grand jury materials in limited circumstances only.  Under that rule, as applicable to the matters at issue here, a court may authorize disclosure of grand jury material "preliminarily to or in connection with a judicial proceeding," at the request of a defendant under specific circumstances, or at the request of the government, again, under particular circumstances articulated by the rule.  Here, neither the Government nor Defendants

seek disclosure of grand jury material.  Nor does the Court find it appropriate at this juncture to disclose such materials because the Court finds no violation, and the grand jury materials at issue relate to an ongoing grand jury investigation.

## A.  Grand Jury Abuse

Turning to Defendants' points regarding possible grand jury abuse, Defendants express concern that they have developed information indicating that the Government has subpoenaed a witness to testify before the grand jury on a date after the grand jury returned its Indictment in the pending matter. While the law has firmly established that a prosecutor may not use the grand jury for discovery regarding a pending indictment, the government may "continue an investigation from which information relevant to a pending prosecution 'may be an incidental benefit.'" *United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998) (quoting *United States v. Beasley*, 550 F.2d 261, 266 (5th Cir. 1977)); *see also United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th Cir. 2009).  The Eleventh Circuit has also found no abuse where, after an indictment was returned, the government subpoenaed a witness for the purpose of investigating alleged false statements by that witness and providing the witness with an opportunity to recant.  *See, e.g., Beasley*, 550 F.2d at 267.

With these principles in mind, the Court has reviewed the grand jury transcripts filed by the Government under seal and has heard the Government's explanation for calling the witness in question and for continuing the grand jury investigation after the Indictment was returned in this case.  Additionally, the Court has asked the Government further questions concerning its explanation to ensure that a proper purpose exists for the alleged post-indictment grand jury work.  Upon engaging in these activities, the Court finds no evidence at this time that the Government has committed grand jury abuse by allegedly recalling the witness in question after the grand jury

returned the Indictment in this case.

## B.  Invading the Defense Camp

Defendants also complain that the United States questioned a witness regarding her "contacts with and work performed on behalf of the defense attorneys representing the Cohens" and characterize the alleged conduct as an attempted invasion of the defense camp.  D.E. 47 at 2.  An intrusion by the Government on the confidential relationship between a criminal defendant and his attorney, either electronically or through an informant, violates a defendant's Sixth Amendment right to counsel.  *United States v. Zarzour*, 432 F.2d 1, 3 (5th Cir. 1970) (citing *Hoffa v. United States*, 385 U.S. 293 (1966); *Black v. United States*, 385 U.S. 26 (1966).  Generally, however, when courts speak of "invading the defense camp," they refer to the situation where a member or confidant of the defense team acts effectively as an informant for the government regarding defense preparation and strategies in the case.  *See* D.E. 47 at 3-4 (collecting cases).

Upon review of the submitted transcripts, this Court concludes that that did not occur in this case.  Nor did the Court's questioning of the prosecution and review of the record reveal evidence suggesting that the Government has attempted to discern Defendants' defense strategies.  Rather, the Government appears to have questioned the witness within the bounds of permissible areas.  Consequently, based on this record, the Court declines to find prosecutorial misconduct on the grounds of invading the defense camp.

## C.  Witness Harassment and Intimidation

Finally, Defendants assert that the Government has confronted "witnesses and upon hearing the witness's statements, accused witnesses of lying and threatened criminal prosecution unless the

witness changed his/her testimony, to conform to the Government's theories."[1]   D.E. 47 at 2.

Defendants further cite cases standing for the non-controversial principle that the government's

interference with a witness's free and unhampered choice to testify violates the defendant's

constitutional rights.[2]

Indeed, "[i]f a prosecutor abuses her discretion by intentionally attempting to distort the fact-

finding process, then a due process violation exists and a court may order the prosecutor to grant

immunity or face a judgment of acquittal." *United States v. Angiulo*, 897 F.2d 1169, 1191 (1st Cir.

1990) (citing *United States v. Hooks*, 848 F.2d 785, 799 (7th Cir. 1988)).   The First Circuit has

identified two categories of "intentional distortion" that can result in a due process violation.  *See*

*Angiulo*, 897 F.2d at 1191.  The first occurs where the government intimidates or harasses a potential

defense witness to discourage that person from testifying, "for example, by threatening [the witness]

with prosecution for perjury or other offenses."  *Id.*   As the *Angiulo* Court has explained, "Where

such intimidation tactics cause a potential witness to invoke the fifth amendment and withhold

testimony that otherwise would have been available to the defendant, a court may order the

prosecutor to grant immunity to the witness or face a judgment of acquittal."  *Id.* (citations omitted).

The second category of "intentional distortion" includes cases where the government misuses its

---

[1]Although this statement refers to "witnesses," the Motion complains only about one alleged witness – E.M. The Court, therefore, has inquired of the Government specifically with respect to the alleged witness identified by Defendants.

[2]Long ago, the Supreme Court recognized that the constitutional right of a defendant "to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. . . . [A defendant] has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967).

power to authorize immunity in order to manipulate the evidence presented to the jury and render certain exculpatory witnesses unavailable to the defense. *Id.* All of the cases where the Eleventh Circuit has found that prosecutorial misconduct resulting in a due process violation has occurred appear to fall into the first category.

Defendants, however, have not suggested that any potential defense witness has considered not testifying for the defense as a result of any alleged conduct by the Government. The Government has further stated that it is unaware of any potential defense witness who has expressed reluctance to testify for the defense as a result of something that the Government has done or threatened to do.

Moreover, the Court notes that E.M., the witness whom Defendants suggest may have been threatened by the Government, is represented by counsel. Yet E.M. has not sought any protection from the Court, either. Where, as here, no hampering of the defense case is even alleged to have actually occurred, no due process violation appears to be at issue.

Finally, although it would clearly be improper for the Government to require a witness to testify in such a way as to conform to the Government's theories, the Court notes that to the extent that the Government addressed the issue of criminal prosecution for alleged false statements, "it is not improper and indeed totally consistent with the duty of assistant United States attorneys to advise a witness that there exists a serious doubt or question about that witness'[s] testimony." *Beasley*, 550 F.2d at 267. Likewise, it is not inappropriate to give a witness an opportunity to recant allegedly perjurious testimony. *See id.* The Court's review of the transcripts at issue in this case and its consideration of the information presented by the Government during the *ex parte* hearing reveals no improper witness intimidation occurring before the grand jury with respect to the witness in question. Similarly, while Defendants express a concern that the Government asked a grand jury

witness overly personal questions, the Court has satisfied itself that any arguably personal questions asked had a proper prosecutorial purpose.

### Conclusion

For the foregoing reasons, Defendants Leon Cohen Levy and Mauricio Cohen Assor's Motion to Enjoin Government Counsel for Impermissibly Invading the Defense Camp and for Related Relief [D.E. 47] is hereby **DENIED.**

**DONE and ORDERED** this 22nd day of June, 2010.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:    Hon. William J. Zloch
       Counsel of Record